UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

COSTA HOLLYWOOD PROPERTY OWNER, LLC,[1]        Case No. 19-22483-JKO
                                               Chapter 11

      Debtor.

_____/

**EXPEDITED MOTION OF THE DEBTOR FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) USE
CASH COLLATERAL *NUNC PRO TUNC* TO SEPTEMBER 19, 2019
(B) OBTAIN POSTPETITION FINANCING FROM 777 N. OCEAN DRIVE, LLC (II)
GRANTING ADEQUATE PROTECTION AND (III) SCHEDULING FINAL HEARING**

**(Expedited Hearing Requested Pursuant L.R. 9013-1(F) on October 17, 2019)**

**Basis for Requested Expedited Hearing**

The Debtor respectfully requests that the Court conduct a hearing on this Motion consistent with Local Rule 9013-1(F). The Debtor seeks to continue to operate its business in the ordinary course, to preserve jobs, the value of its estate and to facilitate an orderly sale process for the Debtor's property as a going concern. Absent the ability to use Cash Collateral, the Debtor's operations will come to a halt and creditors and parties in interest will be severely prejudiced. In contrast, approval of the use of Cash Collateral on an interim basis will enable the Debtor to continue its operations and allow for an orderly reorganization. The current Interim Cash Collateral Budget expires on October 18, 2019. The Debtor respectfully requests that the Court waive the provisions of Local Rule 9075-1 (B), which requires an affirmative statement that a *bona fide* effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Costa Hollywood Property Owner, LLC., ("***Costa***" or "***Debtor***"), by and through its proposed undersigned counsel, requests this Court, on an expedited basis, enter a second interim order ("***Second Interim Cash Collateral Order***") in the form attached hereto as Exhibit A and final order ("***Final Order***," together with the Interim Order, "***Cash Collateral Order***")

---

[1] The Debtor's current mailing address is 777 North Ocean Drive, Hollywood, FL 33019. The Debtor's EIN is 47-4883778.

(i) authorizing the Debtor to (a) utilize cash collateral on an interim basis *nunc pro tunc* to September 19, 2019, (b) obtain postpetition financing from 777 North Ocean Drive, LLC ("**Secured Lender**") to cover any shortfalls in the Debtor's attached budget, (ii) granting adequate protection therewith, and (iii) scheduling an expedited interim hearing for October 17, 2019 and final hearing on the Motion pursuant to 11 U.S.C. §§ 361, 362, 363, 364 542 and 552, Fed. R. Bankr.P. 4001(b) and (d), 6003 and 9014, Local Rules 4001-2, 9013-1(F) and (G) and 9075-1 and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* ("**Guidelines**"). In support of this Motion ("**Motion**"), the Debtor respectfully states as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Motion is proper under 28 U.S.C. § 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 361, 362, 363, 364 and 552 of 11 U.S.C. § 101 *et seq*. (the "**Bankruptcy Code**") and Rules 4001(b) and (d), 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 4001-2 and 9013-1(F) and (G).

## BACKGROUND

3.      On September 19, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On September 27, 2019, the Debtor filed its Amended Expedited Motion of the Debtor for Interim (1 month) Use of Cash Collateral *Nunc Pro Tunc* to September 19, 2019 (the "**First Cash Collateral Motion**") [ECF No. 23]. On October 7, 2019, the Court entered its

*Interim Order Granting Debtor's Amended Expedited Motion for Interim (1 Month) Use of Cash Collateral Nunc Pro Tunc to September 19, 2019* (the "***First Interim Cash Collateral Order***") [ECF No. 69], pursuant to which the Court approved the Debtor's use of available cash collateral pursuant to a budget that expires on October 18, 2019.

5.      The Debtor continues to manage and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

6.      The Debtor is a Delaware limited liability company authorized to do business in Florida which developed a condominium hotel project commonly known as "Costa Hollywood Beach Resort" located at 777 North Ocean Drive, in Hollywood, Florida (the "***Condo-Hotel***"). The Condo-Hotel contains 307 residential units, 15 commercial units, and 1 Shared Facilities Unit and related improvements. The Debtor (i) owns 43 residential units, 9 commercial units and 1 Shared Facilities Unit (ii) controls the Condominium Association[2] and shares common operating expenses with the Condominium Association,[3] and (iii) has established a rental management program pursuant to which the Debtor acts as the rental agent for "Third Party Controlled Units"[4] that are under contract for the "Rental Management Program" from time to time, and for the Owner Controlled Units.  All units within the Rental Management Program are operated as hotel rooms in the Costa Hollywood Beach Resort.

7.      The Debtor's assets are subject to liens ("***Senior Liens***") on the Debtor's real property, accounts receivable, cash and cash equivalents approximately in the amount of

---

[2] Costa Hollywood Condominium Association, Inc. The Debtor is the developer, and the Condominium Association has not been turned over to the condominium owners.

[3] The Condominium Association has its own budget that is paid for by all condominium unit owners, including the Debtor as developer. Debtor allows the owners the right to use the "Shared Facilities," and condominium unit owners pay an assessment to use the Shared Facilities.

[4] The condominium units owned or controlled by third parties (and which are not owned by Owner), from time to time.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

$47,098,757.81 plus interest in favor of the Secured Lender. The Secured Lender's collateral is valued at approximately $50,525,000. In addition, certain contractors have encumbered the real property with approximately $4 million in construction liens ("**Junior Liens**"). While acknowledging the validity of the Senior Liens, the Debtor reserves the right to challenge the validity of the Junior Liens as this case progresses.

## SUMMARY OF RELIEF REQUESTED

### (*In Accordance With the Court's Guidelines (CG-7)*)

8.      Pursuant to Bankruptcy Rule 4001(b)(1)(B), the Debtor seeks entry of the proposed Second Interim Cash Collateral Order in the form attached hereto as <u>Exhibit A</u>, as well as the Final Order, authorizing the Debtor to (i) use Cash Collateral (as defined below) pursuant to section 363(c) of the Bankruptcy Code in accordance with the budget attached hereto as <u>Exhibit B</u> (the "**Budget**"), which use shall include a professional fee carve-out as detailed below; and (ii) obtain postpetition financing from the Secured Lender to cover any shortfalls in the Budget pursuant section 364 of the Bankruptcy Code.

9.      In addition, the Debtor requests that the Court schedule an expedited interim and final hearing to consider the Motion.

## PREPETITION SECURED INDEBTEDNESS

### Secured Loan from 777 N. Ocean Drive, LLC

10.      On or about July 1, 2016, the Debtor obtained a loan from Secured Lender in the original principal sum of up to $70,000,000 (the "**Loan**"). The Loan is evidenced by an Amended and Restated Construction Loan Note dated July 1, 2016, executed by the Debtor in favor of Secured Lender (the "**Note**") in the principal sum of up to $70,000,000.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

11.     As security for the repayment of the Note, Debtor executed and delivered to Secured Lender a Certificate of Future Advance and Amended and Restated Mortgage and Security Agreement ("***Mortgage***") which was recorded on July 20, 2016.

12.     Between August 22, 2017 and September 30, 2018, the Debtor and the Secured Lender entered into three successive forbearance agreements (collectively, the "***Forbearance Agreements***") with the final forbearance agreement being the Third Amended Forbearance Agreement (the "***Final Forbearance Agreement***") dated September 30, 2018.

13.     Pursuant to the Mortgage, the Debtor granted the Secured Lender a continuing security interest in and lien on, among other things, all of the Debtor's real and personal property and fixtures which it now owns or are in existence or hereafter acquired or created, wherever located, of whatever kind and description, tangible or intangible, including without limitation, all money, instruments, documents, deposit accounts, chattel paper, accounts and general intangibles, as these terms are defined in the Uniform Commercial Code ("***Collateral***").

14.     As of the Petition Date, the Debtor owes the Secured Lender approximately $47,098,757.81 plus interest. The Collateral is valued at approximately $50,525,000.

## COLLATERAL

15.     The Debtor's assets which include, *inter alia*, cash on hand and on deposit in bank accounts, accounts receivable, automobiles, furniture, equipment and supplies is valued at approximately $50,525,000, subject to appraisal.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## RELIEF REQUESTED

**A.    The Debtor's Need for Use of Cash Collateral and Secured Postpetition Financing**

16.    By this Motion the Debtor seeks the entry of an interim order authorizing use of Cash Collateral, as that term is defined in 11 U.S.C. § 363(a) and authority to obtain secured post-petition financing ("***Postpetition Financing***") pursuant to 11 U.S.C. § 364.

17.    <u>Need for Postpetition Financing</u>. Absent the ability to use Cash Collateral and obtain the secured Postpetition Financing to cover shortfalls in the operating budget, which is to be provided by the Secured Lender, the Debtor will be unable to successfully operate its business, propose a plan and proceed to sell substantially all of their assets as a going concern, all to the detriment of the Debtor, its estate, its creditors, and other parties in interest. The Debtor does not have sufficient working capital and other financing available to fund its operating business, maintain estate property, and administer its cases without the proposed Postpetition Financing. In contrast, approval of the use of Cash Collateral on an interim basis and the Postpetition Financing will enable the Debtor to continue its operations and allow for an orderly sale process for the Property.

18.    In view of the foregoing, the relief sought herein is immediate, necessary and essential in order for the Debtor to continue to meet its financial obligations to its employees, vendors and other creditors, and to maintain its operations and property so as to maximize the value of the estate. For these same reasons, the relief sought herein is in the best interests of the Debtor and the estate.

19.    Specifically, the Debtor seeks to use the Cash Collateral for those purposes and in the amounts set forth in the budget which is attached hereto as <u>Exhibit B</u> (the "***Budget***"). This Budget contains typical budget items, and encompasses and provides for the complete operation

and management of the Debtor's business. However, the Budget contains shortfalls which the Secured Lender has agreed to fund with the Postpetition Financing.

20.     The Debtor requests that it be allowed variances with any line item set forth in the Budget, provided that such variances shall not exceed ten percent (10%) of each such line item. *provided*, *however*, that the Debtor may make payments up to ten percent (10%) in excess of the total budgeted expenses for that month in the Budget so long as actual disbursements do not exceed one hundred and ten percent (110%) of the budgeted total expenses for such month of the Budget (collectively, the "***Allowed Variance***"). In the event that an expense arises which is not within any of the approved line items in the Budget, or the Debtor anticipates that any line item will need to be exceeded by more than the Allowed Variance, the Debtor shall request approval from the Secured Lender, and the Secured Lender shall have three (3) business days from the date of Debtor's request within which to provide consent or object. In the event that the Secured Lender does not consent, the Debtor shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense, which relief may be sought on an emergency basis.

21.     The Debtor additionally requests that fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case (the "***Trustee Carveout***") shall be paid out of the Cash Collateral, and such amounts may be included in the approved Budget.

22.     In the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with the Secured Lender directly, as such fees are not included in the Debtor's Counsel's Carveout.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

23.     In addition, nothing contained in any Order granting this Motion shall cause a novation of the Secured Lender's documentation.

## VII.   BASIS FOR RELIEF REQUESTED

### Use of Cash Collateral

24.     Section 363 of the Bankruptcy Code governs a debtor's ability to use, sell or lease property of the estate. Section 363(c)(2) of the Bankruptcy Code restricts a debtor's ability to use cash collateral. That section provides, in pertinent part:

> The trustee [or debtor in possession] may not use, sell or lease cash collateral under paragraph (1) of this subsection unless -
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

25.     Section 363(a) of the Bankruptcy Code defines "cash collateral" as including cash and cash equivalents "whenever acquired," in which the estate and any entity other than the estate have an interest, and the "proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a). Under Bankruptcy Code sections 363(c)(2) and (e), the Court may authorize the Debtor to use Cash Collateral as long as its secured creditors consent to such use, or if such secured creditors are "adequately protected."

26.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral. *See* 11 U.S.C. § 361; *In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was

adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

27.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). For example, the *O'Connor* court observed: "In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." 808 F.2d at 1396. (citations omitted).

28.     Importantly, the Secured Lender consents to the Debtor's proposed use of Cash Collateral in conformity with the attached Budget, and pursuant to which the Debtor proposes to provide the Secured Lender adequate protection by granting a replacement lien against the Property of the Debtor for any use of the Secured Lender's Cash Collateral, with such liens having the same seniority and entitled to the same level of priority as the priority of the Secured Lender's liens against the Debtor's Property that existed prior to the Petition Date.

29.     Importantly, the Secured Lender consents to the Debtor's proposed use of Cash Collateral in conformity with the attached Budget, and pursuant to which the Debtor proposes to provide the Secured Lender with the following adequate protection: the Secured Lender shall have a valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority liens and/or replacement liens on, and security interest in, all of the Debtor's Property (commonly known as 327 & 319 Pierce Street and 330 & 348 Indiana Street, Hollywood, FL 33019 (the "***Property***")), to the same extent that such liens and security interests existed pre-petition and subject to any valid, perfected, non-avoidable senior liens existing as of the Petition Date, and all post-petition assets of the Debtor of the same type and nature as the Debtor's Property, and the

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

proceeds thereof. The stay imposed by section 362(a) of the Bankruptcy Code should be modified, to the extent applicable, to allow for the filing and recording of a certified copy of the Order approving this Motion or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of the Petition Date.

30.    <u>Prepetition Indebtedness</u>: The Debtor admits, stipulates, and agrees that (i) the principal amount owed to the Secured Lender is not less than $47,098,757.81 plus interest, costs and attorneys' fees, (ii) the lien and security interest the Debtor granted to the Secured Lender is a valid, binding, perfected and enforceable first-priority lien on and security interest on the Debtor's Property, and (iii) no portion of the indebtedness due to the Secured Lender or the liens and security interests granted to the Secured Lender is subject to avoidance, subordination (whether equitable, contractual or otherwise), recharacterization, recovery, attack, offset, counterclaim, cross-claims, disallowance, impairment, recoupment, defense, challenge, objection, reduction, disgorgement, or claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

31.    Accordingly, the Debtor submits that the use of Cash Collateral is proper under the circumstances and requests authorization to use Cash Collateral based on the grounds set forth herein.

**Secured Postpetition Financing**

32.    <u>Postpetition Financing</u>. The Debtor seeks authority on an interim basis to obtain secured Postpetition Financing in the total amount not to exceed $726,000.00 ("***DIP Loan***"), provided that the maximum amount to be advanced on an interim basis shall not exceed $580,000.00 (the "***Interim Amount***"), with interest to accrue thereon in accordance with the

terms and conditions of the Loan Documents, which Interim Amount shall be sufficient to pay the Debtor's liabilities set forth on the attached Budget to the extent the Debtor does not have Cash Collateral available to pay such liabilities during the first 3-month period of the Budget pursuant to section 364 of the Bankruptcy Code and to be used subject to the terms and conditions of this Interim Order. The Post-Petition Financing provided by the Secured Lender to pay liabilities pursuant to the Budget shall become Cash Collateral and added to the prepetition indebtedness of the Secured Lender and afforded the same protections for Cash Collateral described in paragraphs 3 and 4 above. Pursuant to Section 364(c)(1) of the Bankruptcy Code, the Post-Petition Financing shall constitute an administrative expense of the Debtor and the Debtor's estate and shall have priority over all administrative expenses of the kind specified in Section 503(b) and 507(b) of the Bankruptcy Code. In addition, any sum advanced on account of the Post-Petition Financing from the Secured Lender shall be (i) deemed an advance as defined in Section 24 of the Certificate of Future Advance and Amended and Restated Mortgage and Security Agreement from the Debtor to the Secured Lender, recorded on July 20, 2016 in Broward County, Florida Official Records as Instrument Number 113820788 (the "*Mortgage*") and such advance shall be added to the prepetition indebtedness of the Secured Lender, with interest to accrue on any such advance, in accordance with the terms conditions of the Mortgage and the Note which such Mortgage secures, and (ii) be secured by a first priority priming lien in favor of the Secured Lender pursuant to Section 364(d) of the Bankruptcy Code on all of the Debtor's Property senior to any and all liens, security interests and mortgages on the Debtor's Property existing as of the Petition Date. The Secured Lender shall have the sole discretion to determine if it shall fund the balance of Post-Petition Financing beyond the Interim Amount, including the right to approve an updated budget in respect thereof.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

33.    <u>Benefit to the Estate and Reasonable Exercise of Business Judgment</u>.  Given the Debtor's current financial condition and need for liquidity, the Debtor respectfully submits that the proposed Postpetition Financing represents an actual, necessary cost and expense of preserving the estate within the meaning of 11 U.S.C. § 503(b)(1). The Debtor is exercising its business judgment in a reasonable manner by obtaining the Postpetition Financing.

34.    <u>Immediate or Irreparable Damage</u>. Owing to the urgent need of funding to pay the shortfalls in the attached Budget, and the expiry of the Interim Budget on October 18, 2019, immediate and irreparable damage will be caused to the estate if immediate interim relief is not granted before a final hearing on the Motion (the "***Final Hearing***"). Debtor further submits that it has attempted in the prepetition period to obtain financing to take out the secured lender to no avail. Moreover, any attempt to obtain postpetition financing from a source other than the Secured Lender is futile, as the Secured Lender has a blanket lien on all the Debtor's assets including cash, and it is highly unlikely a third party lender would lend postpetition financing on a subordinated basis. To the extent a priming lien were sought from a third party, the Secured Lender would vigorously object causing the estate to incur significant administrative fees and costs to resolve.

35.    Pursuant to 11 U.S.C. § 361, the Debtor submits that the foregoing provides adequate protection to the Secured Lender.

36.    Accordingly, the Debtor submits that the Proposed Postpetition Financing is proper under the circumstances and requests authorization to obtain Postpetition Financing based on the grounds set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## VIII.   REQUEST FOR FINAL HEARING

37.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court set a date for a Final Hearing that is no earlier than fourteen (14) days after service of this Motion.

WHEREFORE, the Debtor respectfully requests that this Court (i) enter the Interim Order, substantially in the form attached hereto as Exhibit A, authorizing the relief requested herein; (ii) set the Final Hearing on this Motion; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: October 15, 2019.

 s/ James C. Moon
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
Meaghan E. Murphy, Esquire
Florida Bar No. 102770
mmurphy@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtor-in-Possession*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on October 15, 2019, via the Court's Notice of Electronic Filing upon Registered Users set forth on the attached **Exhibit 1** and via U.S. Mail upon the Master Service List, pursuant to Local Rule 2002-1 (H), Designation of Master Service List in Chapter 11 Cases, attached as **Exhibit 2**.

s/ James C. Moon
James C. Moon, Esquire

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

COSTA HOLLYWOOD PROPERTY OWNER, LLC,[1]        Case No. 19-22483-JKO
                                                Chapter 11

      Debtor.

_____/

**INTERIM ORDER GRANTING EXPEDITED MOTION OF THE DEBTOR
FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR
TO (A) USE CASH COLLATERAL *NUNC PRO TUNC* TO SEPTEMBER 19, 2019, (B)
OBTAIN SECURED POSTPETITION FINANCING FROM 777 NORTH OCEAN
DRIVE, LLC, (II) GRANTING ADEQUATE PROTECTION,
AND (III) SCHEDULING FINAL HEARING**

      **THIS MATTER** came before the Court on October 17, 2019 at 9:30 a.m. for hearing (the

"***Hearing***") upon the *Expedited Motion of the Debtor for the Entry of Interim and Final Orders (I)*

*Authorizing the Debtor to (A) Use Cash Collateral Nunc Pro Tunc to September 19, 2019 (B)*

---

[1] The Debtor's current mailing address is 777 North Ocean Drive, Hollywood, FL 33019.  The Debtor's EIN is 47-4883778.

EXHIBIT A

*Obtain Secured Postpetition Financing From 777 North Ocean Drive, LLC, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing* (the "***Motion***") [ECF No. ___].  The Court having reviewed the Motion, having accepted the proffer of evidence from the Debtor, having heard statements for counsel for the Debtor and 777 North Ocean Drive, LLC (the "***Secured Lender***") in support of the relief requested in the Motion, having heard a statement from counsel to Beauchamp Construction Co., Inc. ("***Beauchamp***") that Beauchamp's rights should be preserved and otherwise being fully informed of the facts **FINDS AND CONCLUDES** as follows:

A.      Jurisdiction and Venue. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue is proper before this Court pursuant to 28 U.S.C. § 1408;

B.      Core Proceeding. This matter is core pursuant to 28 U.S.C. § 157(b)(2);

C.      Notice. Notice of the Motion and the Hearing was sufficient under the circumstances;

D.      Need for Postpetition Financing. The Debtor has demonstrated the need to obtain secured postpetition financing pursuant to § 364 of the Bankruptcy Code. The Debtor asserts that in the absence of the proposed secured postpetition financing set forth in the Motion, which is to be provided by the Secured Lender, the Debtor will be unable to successfully operate its business, propose a plan and proceed to sell substantially all of their assets as a going concern, all to the detriment of the Debtor, its estate, its creditors, and other parties in interest. The Debtor asserts that it does not have sufficient working capital and other financing available to fund its operating business, maintain estate property, and administer its cases without the proposed secured postpetition financing.

E.      Benefit to the Estate and Reasonable Exercise of Business Judgment. Given the Debtor's current financial condition and need for liquidity, the proposed financing represents an actual, necessary cost and expense of preserving the estate within the meaning of 11 U.S.C. §

503(b)(1). The Debtor is exercising its business judgment in a reasonable manner by obtaining the financing.

      F.    <u>Immediate or Irreparable Damage</u>. Owing to the urgent need of funding to pay the shortfalls in the attached Budget, and the expiry of the Interim Budget on October 18, 2019, immediate and irreparable damage will be caused to the estate if immediate interim relief is not granted before a final hearing on the Motion (the "***Final Hearing***").

      G.    <u>Good Faith of the Secured Lender</u>. The Secured Lender is a "good faith" lender within the meaning of § 364(e) of the Bankruptcy Code, and the Secured Lender's claims and other protections arising from or granted pursuant to this Order (the "***Second Interim Order***") will not be affected by any subsequent reversal, modification, vacatur or amendment of this Second Interim Order or any other order, as provided in § 364(e) of the Bankruptcy Code.

The Court having determined, therefore, that just cause exits to grant the relief requested in the Motion on an interim basis as set forth herein. It is accordingly:

**ORDERED AND ADJUDGED** as follows**:**

1.    The Motion is **GRANTED** as set forth herein.

2.    <u>Use of Cash Collateral</u>:  The Debtor is authorized, from the Petition Date through and including March 20, 2019 (the "***Interim Period***"), to use cash collateral as defined in Section 363(a) of the Bankruptcy Code to pay for the expenses and costs of administration incurred by the Debtor in accordance with the budget attached to the Motion as <u>Exhibit B</u> (the "***Budget***").  The Debtor shall not exceed any line item on the Budget by an amount exceeding ten percent (10%) of each such line item; *provided*, *however*, that the Debtor may make payments up to ten percent (10%) in excess of the total budgeted expenses for that month in the Budget so long as actual disbursements do not exceed one hundred and ten percent (110%) of the budgeted total expenses for the month (collectively, the "***Allowed Variance***"). In the event that an expense arises which is

not within any of the approved line items in the Budget, or the Debtor anticipates that any line item will need to be exceeded by more than the Allowed Variance, the Debtor shall request approval from the Secured Lender, and the Secured Lender shall have three (3) business days from the date of Debtor's request within which to provide consent or object. In the event that the Secured Lender does not consent, the Debtor shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense, which relief may be sought on an emergency basis.

3.    <u>Prohibited uses of Cash Collateral:</u> Except as expressly permitted by this Order, consented to by the Secured Lender, or approved by this Court, the Debtor is prohibited from use of any of the Cash Collateral for any other purpose whatsoever including but not limited to:

      a.   prepare, prosecute or seek approval of any motion, application or plan of reorganization or liquidation that would, if so approved, investigate, assert, commence, prosecute or otherwise take any action with respect to any lien, claim or alleged lien or claim against the Secured Lender, including but not limited to, claims arising under §§ 542 through and including 553 of the Bankruptcy Code.

      b.   challenge the amount, validity, priority or enforceability of the Secured Lender's prepetition loan with the Debtor (the "***Loan***") or the security interests and liens of the Secured Lender in the Debtor's Property (as defined below) pursuant thereto or assert any defense, claim, counterclaim or offset with respect to the Loan or the security interests and liens of the Secured Lender;

      c.   challenge in any manner whatsoever the Loan and any other rights, claims and entitlements of the Secured Lender under any of the documents executed by the Debtor and given to the Secured Lender (or

4

its predecessors) in connection with the origination the Loan or documents relating to the Loan (the "***Loan Documents***"); or

d.  change, amend or modify in any manner whatsoever any of the Loan Documents executed in connection with the Loan.

4.  <u>Adequate Protection to Secured Lender</u>:  Subject only to the DIP Liens (as defined below), the Secured Lender is hereby granted valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority liens and/or replacement liens on, and security interest in, all of the Debtor's Property, whether real property or personal property, located at or used in connection with the operations of the property commonly known as 327 & 319 Pierce Street and 330 & 348 Indiana Street, Hollywood, FL 33019 (the "***Debtor's Property***"), to the same extent that such liens and security interests existed pre-petition and subject to any valid, perfected, non-avoidable senior liens existing as of the Petition Date, and all post-petition assets of the Debtor of the same type and nature as the Debtor's Property, and the proceeds thereof. The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified, to the extent applicable, to allow for the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of the Petition Date. As further adequate protection, Secured Lender shall have a super priority administrative expense claim under Bankruptcy Code §364(c)(1) for its replacement liens. A certified copy of this Interim Order may, in the discretion of the Secured Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order for filing and/or recording as acceptable.

5.    <u>Prepetition Indebtedness</u>: The Debtor admits, stipulates, and agrees that (i) the principal amount owed to the Secured Lender is not less than $47,098,757.81 plus interest, costs and attorneys' fees, (ii) the lien and security interest the Debtor granted to the Secured Lender is a valid, binding, perfected and enforceable first-priority lien on and security interest on the Debtor's Property, and (iii) no portion of the indebtedness due to the Secured Lender or the liens and security interests granted to the Secured Lender is subject to avoidance, subordination (whether equitable, contractual or otherwise), recharacterization, recovery, attack, offset, counterclaim, cross-claims, disallowance, impairment, recoupment, defense, challenge, objection, reduction, disgorgement, or claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

6.    <u>Postpetition Financing</u>. The Debtor is authorized on an interim basis to obtain secured post-petition financing from the Secured Lender (the "***Post-Petition Financing***") in the total amount not to exceed $726,000.00, provided that the maximum amount to be advanced on an interim basis shall not exceed $580,000.00 (the "***Interim Amount***"), with interest to accrue thereon in accordance with the terms and conditions of the Loan Documents, which Interim Amount shall be sufficient to pay the Debtor's liabilities set forth on the attached Budget to the extent the Debtor does not have Cash Collateral available to pay such liabilities during the 3-month period of the Budget pursuant to section 364 of the Bankruptcy Code and to be used subject to the terms and conditions of this Interim Order. The Post-Petition Financing provided by the Secured Lender to pay liabilities pursuant to the Budget shall become Cash Collateral and added to the prepetition indebtedness of the Secured Lender and afforded the same protections for Cash Collateral described in paragraphs 3 and 4 above. Pursuant to Section 364(c)(1) of the Bankruptcy Code, the Post-Petition Financing shall constitute an administrative expense of the Debtor and the Debtor's estate and shall have priority over all administrative expenses of the kind specified in

Section 503(b) and 507(b) of the Bankruptcy Code. In addition, any sum advanced on account of the Post-Petition Financing from the Secured Lender shall be (i) deemed an advance as defined in Section 24 of the Certificate of Future Advance and Amended and Restated Mortgage and Security Agreement from the Debtor to the Secured Lender, recorded on July 20, 2016 in Broward County, Florida Official Records as Instrument Number 113820788 (the "***Mortgage***") and such advance shall be added to the prepetition indebtedness of the Secured Lender, with interest to accrue on any such advance, in accordance with the terms conditions of the Mortgage and the Note which such Mortgage secures, and (ii) be secured by a first priority priming lien in favor of the Secured Lender pursuant to Section 364(d) of the Bankruptcy Code on all of the Debtor's Property senior to any and all liens, security interests and mortgages on the Debtor's Property existing as of the Petition Date. The Secured Lender shall have the sole discretion to determine if it shall fund the balance of Post-Petition Financing beyond the Interim Amount, including the right to approve an updated budget in respect thereof. In order to secure and perfect Secured Lender's post-petition Financing a certified copy of this Interim Order may, in the discretion of the Secured Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order for filing and/or recording as acceptable.

7.     No Novation: This Order shall not cause a novation of the Secured Lender's Loan Documents.

8.     Non-Waiver of Rights and Remedies: Other than as set forth in paragraph 5 above and except for the Post-Petition Financing, this Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of the Debtor or the Secured Lender (with respect to liens, claims, value determinations, and all other matters) under the Bankruptcy Code or

applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral) and does not bind any subsequently appointed trustee or committee. In addition, nothing in this Order including any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Secured Lender is or will be adequately protected, except as otherwise set forth herein. Further, nothing in this Order shall prejudice the Secured Lender's rights to:

     a.     Seek further adequate protection;

     b.     request conversion or dismissal of the Case;

     c.     seek relief from the automatic stay under § 362(d) of the Bankruptcy Code;

     d.     request appointment of a trustee or examiner in the Case;

     e.     seek termination of exclusivity;

     f.     object to or otherwise oppose any plan or disclosure statement proposed in this Case;

     g.     object to or otherwise oppose any relief sought by any entity or party in this chapter 11 case, including without limitation, to object to any application filed by any professional in these cases seeking compensation and reimbursement of expenses under §§ 330 or 331 of the Bankruptcy Code;

     h.     assert that the Debtor is obligated to pay the Secured Lender the default rate of interest and any other charges, penalties, attorneys' fees and expenses and costs required to be paid under the Loan; and

     i.     any and all rights, remedies, claims and causes of action which the Secured Lender has or may have against any party who may be

liable with the Debtor for the Loan and otherwise under the Loan or any part thereof.

Furthermore, with the exception of Post-Petition Financing provided by the Secured Lender (as described in paragraph 6 of this Order), this Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies (with respect to liens, claims, value determinations and all other matters) under the Bankruptcy Code or applicable non-bankruptcy law, of any creditor or other party-in-interest, including Beauchamp.

9.    <u>Default</u>: Notwithstanding anything to the contrary contained herein, the Debtor's right to use Cash Collateral and borrow under the Post-Petition Financing under this Interim Order shall terminate upon the occurrence of any of the following events each an "***Event of Default***":

    a.  The entry by this Court or any other court of an order vacating or modifying this Second Interim Order;

    b.  The dismissal of the Debtor's bankruptcy case or the conversion of the case to a case under Chapter 7 of the Bankruptcy Code;

    c.  Failure of the Debtor to file a disclosure statement (the "***Disclosure Statement***") and a plan (the "***Plan***") by November 15, 2019, each in a form reasonably acceptable to the Secured Lender which agrees that it will agree to a reasonable extension of time to file a Plan and Disclosure Statement to the extent good cause is shown for such extension by the Debtor;

    d.  Failure of the Debtor, subject to the Court's availability and compliance with service requirements, to (i) obtain an approved Disclosure Statement by January 10, 2019, and (ii) confirm the Plan on or before February 28, 2020;

9

e.  The filing by the Debtor of any motion, application, adversary proceeding or plan of reorganization or liquidation seeking the modification, amendment or vacatur of this Second Interim Order without the express written prior consent of Secured Lender;

f.  The appointment of a trustee, receiver or examiner or other representative with expanded powers for any of the Debtor;

g.  The Debtor ceases operations of its present business as such existed on the Petition Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of Secured Lender, except to the extent contemplated by the Budget;

h.  The Debtor seeks to borrow money from any person or entity with a lien, security interest or mortgage on the Debtor's Property that is senior to or *pari passu* with the liens, security interests and mortgages of the Secured Lender, including in respect of the Post-Petition Financing; and

i.  Failure to comply with any material term of this Second Interim Order.

10.  <u>Further Hearing</u>:  This Court shall hold a further hearing on the Debtor's use of cash collateral on **December _____, 2019 at _____.** at the United States Bankruptcy Courthouse, 299 E. Broward Blvd, Courtroom 308, Fort Lauderdale, FL 33301.

11.     <u>Retention of Jurisdiction:</u> The Court has and will retain jurisdiction to enforce this

Interim Order according to its terms.

### 

**Submitted By:**
James C. Moon, Esquire
Florida Bar No. 9382111
jmoon@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
*Counsel for the Debtor*
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:     (305) 358-6363
Telefax:       (305) 358-1221

**Copies Furnished To:**
James C. Moon, Esquire, is directed to serve copies of this Order on all parties in interest and to
file a Certificate of Service.

11

| | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Feb-20 | Mar-20 | TOTALS |
|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | |
| **Hotel Revenues** | | | | | | | |
| Rooms Revenue | 284,440 | 522,160 | 897,480 | 493,298 | 822,320 | 920,908 | 3,940,605 |
| Miscellaneous Income | 38,425 | 59,725 | 78,500 | 50,318 | 80,764 | 91,657 | 399,389 |
| Other Operated Departments Revenues | 183 | 267 | 340 | 240 | 336 | 385 | 1,751 |
| Parking | 33,506 | 37,002 | 38,125 | 33,200 | 34,654 | 40,089 | 216,576 |
| **Total Hotel Operating Revenue** | **356,554** | **619,153** | **1,014,445** | **577,056** | **938,074** | **1,053,039** | **4,558,321** |
| **Shared Facilities Revenues** | | | | | | | |
| Assessments - Homeowners | 217,588 | 217,588 | 217,588 | 217,588 | 217,588 | 217,588 | 1,305,529 |
| **Total Shared Facilities Revenues** | **217,588** | **217,588** | **217,588** | **217,588** | **217,588** | **217,588** | **1,305,529** |
| **TOTAL REVENUES** | **574,143** | **836,742** | **1,232,033** | **794,644** | **1,155,662** | **1,270,627** | **5,863,850** |
| **EXPENSES** | | | | | | | |
| **Hotel Departmental Expenses** | | | | | | | |
| Rooms Expense[1] | 108,575 | 142,157 | 179,905 | 135,230 | 171,346 | 194,662 | 931,875 |
| Other Operated Departments Expenses | 146 | 214 | 272 | 1,026 | 1,102 | 1,142 | 3,903 |
| Parking | 19,967 | 19,418 | 20,006 | 20,108 | 18,368 | 20,166 | 118,033 |
| **Total Departmental Expenses** | **128,688** | **161,789** | **200,183** | **156,364** | **190,816** | **215,970** | **1,053,810** |
| **Hotel Operating Expenses** | | | | | | | |
| Administration And General[2] | 64,684 | 66,683 | 81,243 | 69,310 | 72,730 | 81,096 | 435,746 |
| Condo - Owner Distribution[2] | 127,998 | 234,972 | 403,866 | 221,984 | 370,044 | 414,408 | 1,773,272 |
| Information And Telecommunication[3] | 13,459 | 13,311 | 13,459 | 14,653 | 14,104 | 14,496 | 83,484 |
| Sales And Marketing[4] | 48,952 | 46,893 | 42,523 | 51,108 | 43,962 | 49,744 | 283,183 |
| Repairs And Maintenance[5] | 3,263 | 4,328 | 4,634 | 2,911 | 3,944 | 4,483 | 23,563 |
| **Total Hotel Undistributed Expenses** | **258,357** | **366,187** | **545,726** | **359,966** | **504,784** | **564,227** | **2,599,247** |
| **Hotel Fixed Expenses[6]** | | | | | | | |
| Base Management Fee | 35,000 | 35,000 | 26,849 | 35,000 | 35,000 | 35,000 | 201,849 |
| Insurance Expense | 304 | 304 | 304 | 569 | 569 | 569 | 2,618 |
| **Total Hotel Fixed Expenses** | **35,304** | **35,304** | **27,153** | **35,569** | **35,569** | **35,569** | **204,467** |
| **Shared Facilities Administrative Expenses** | | | | | | | |
| Licenses and Permits | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Computer expense | 200 | 200 | 200 | 200 | 200 | 200 | 1,200 |
| Office Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |

EXHIBIT B

| | | | | | | | Total |
|---|---|---|---|---|---|---|---|
| Printing and Copying | 200 | 200 | 200 | 200 | 200 | 200 | 1,200 |
| Postage | 450 | 450 | 450 | 450 | 450 | 450 | 2,700 |
| Bank Fees | 42 | 42 | 42 | 42 | 42 | 42 | 250 |
| Audit Fees | 542 | 542 | 542 | 542 | 542 | 542 | 3,250 |
| Accounting Fees | 167 | 167 | 167 | 167 | 167 | 167 | 1,000 |
| Dues and Fees | 250 | 250 | 250 | 250 | 250 | 250 | 1,500 |
| Legal and Professional - Collections | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 9,000 |
| Cell Phone Allowance | 160 | 160 | 160 | 160 | 160 | 160 | 960 |
| Management Fee | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 21,000 |
| **Total Shared Facilities Administrative Expenses** | **8,510** | **8,510** | **8,510** | **8,510** | **8,510** | **8,510** | **51,060** |
| **Shared Facilities Utilities** | | | | | | | |
| Electric - General Operations | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 240,000 |
| Gas & Diesel | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |
| Water/Sewer | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 90,000 |
| Telephone / Internet | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 48,000 |
| Utilities Deposits | 40,000 | 0 | 0 | 0 | 0 | 0 | 40,000 |
| **Total Shared Facilities Utilities** | **105,000** | **65,000** | **65,000** | **65,000** | **65,000** | **65,000** | **430,000** |
| **Shared Facilities Contracts** | | | | | | | |
| Beach Services | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 57,000 |
| Support | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Copier | 850 | 850 | 850 | 850 | 850 | 850 | 5,100 |
| Elevator Contract | 2,496 | 2,597 | 2,597 | 2,597 | 2,597 | 2,597 | 15,481 |
| Equipment Contract - Health Club | 2,173 | 2,173 | 2,173 | 2,173 | 2,173 | 2,173 | 13,040 |
| Equipment Contract - Fire Safety | 1,918 | 1,918 | 1,918 | 1,918 | 1,918 | 1,918 | 11,510 |
| Rooftop Safety Equipment | 45 | 45 | 45 | 45 | 45 | 45 | 273 |
| Fire System Monitoring | 82 | 82 | 82 | 82 | 82 | 82 | 490 |
| Generator | 205 | 205 | 205 | 205 | 205 | 205 | 1,230 |
| HVAC System | 1,950 | 1,950 | 1,950 | 1,950 | 1,950 | 1,950 | 11,700 |
| Lawn Maintenance | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 7,200 |
| Key System | 0 | 500 | 500 | 500 | 500 | 500 | 2,500 |
| Windows Cleaning | 0 | 4,900 | 4,900 | 4,900 | 4,900 | 4,900 | 24,500 |
| Outdoor Plant service | 0 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| Pest Control | 800 | 800 | 800 | 800 | 800 | 800 | 4,800 |
| Pool/Spa Contract | 1,745 | 1,745 | 1,745 | 1,745 | 1,745 | 1,745 | 10,470 |
| Security Staff | 6,708 | 6,708 | 6,708 | 6,708 | 6,708 | 6,708 | 40,248 |
| Trash Compactor Lease | 385 | 770 | 770 | 770 | 770 | 770 | 4,233 |
| Trash Removal | 1,430 | 1,430 | 1,430 | 1,430 | 1,430 | 1,430 | 8,580 |
| **Total Shared Facilities Contracts** | **32,488** | **39,373** | **39,373** | **39,373** | **39,373** | **39,373** | **229,355** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Shared Facilities Insurance** | | | | | | | |
| General Liability | 6,486 | 0 | 0 | 6,486 | 6,486 | 6,486 | 25,944 |
| Property & Windstorm | 26,129 | 0 | 0 | 26,129 | 26,129 | 26,129 | 104,516 |
| Flood | 6,516 | 0 | 0 | 6,516 | 6,516 | 6,516 | 26,065 |
| Equipment Breakdown | 682 | 0 | 0 | 682 | 682 | 682 | 2,726 |
| W/C | 59 | 0 | 0 | 59 | 59 | 59 | 235 |
| D&O | 405 | 0 | 0 | 405 | 405 | 405 | 1,621 |
| Financing 6% and stamps | 2,503 | 0 | 0 | 2,503 | 2,503 | 2,503 | 10,012 |
| Crime | 108 | 0 | 0 | 108 | 108 | 108 | 433 |
| Umbrella | 781 | 0 | 0 | 781 | 781 | 781 | 3,125 |
| Insurance Renewal Downpayment (Dec 2019) | 0 | 0 | 175,000 | 0 | 0 | 0 | 175,000 |
| **Total Shared Facilities Insurance** | **43,669** | **0** | **175,000** | **43,669** | **43,669** | **43,669** | **349,677** |
| **Shared Facilities Repairs & Maintenance** | | | | | | | |
| Janitorial Supplies | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies Maintenance | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |
| HVAC | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 48,000 |
| Plumbing | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |
| Electrical | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Elevators | 919 | 500 | 500 | 500 | 500 | 500 | 3,419 |
| Lighting | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Fire Alarm | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 15,000 |
| Pool-Supplies Equipment & Repairs | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| Boilers | 150 | 150 | 150 | 150 | 150 | 150 | 900 |
| Communications Equipment (Radios) | 458 | 458 | 458 | 458 | 458 | 458 | 2,748 |
| **Total Shared Facilities Repairs & Maintenance** | **18,527** | **18,108** | **18,108** | **18,108** | **18,108** | **18,108** | **109,067** |
| **Shared Facilities Salaries[7]** | | | | | | | |
| Engineering Staff | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 159,000 |
| Owner Relations Staff | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 49,200 |
| Housekeeping Staff | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 27,000 |
| **Total Shared Facilities Salaries** | **39,200** | **39,200** | **39,200** | **39,200** | **39,200** | **39,200** | **235,200** |
| **Bankrupcy Expenses** | | | | | | | |
| US Trustee | 325 | 0 | 0 | 32,226 | 0 | 0 | 32,551 |
| Legal Banruptcy | 30,000 | 30,000 | 30,000 | 20,000 | 20,000 | 20,000 | 150,000 |
| **Total Bankrupcy Expenses** | **30,325** | **30,000** | **30,000** | **52,226** | **20,000** | **20,000** | **182,551** |
| **Other Expenses** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Critical Vendors | 176,024 | 191,394 | 111,921 | 78,974 | 72,192 | 60,000 | 690,506 |
| Developer Fee | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 120,000 |
| Administration & Bookkeeping | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 102,000 |
| Maintenance Staff | 6,932 | 6,932 | 6,932 | 6,932 | 6,932 | 6,932 | 41,590 |
| **Total Other Expenses** | **219,956** | **235,325** | **155,853** | **122,905** | **116,124** | **103,932** | **954,095** |
| **TOTAL EXPENSES** | **920,023** | **998,797** | **1,304,106** | **940,891** | **1,081,153** | **1,153,558** | **6,398,528** |
| **NET INCOME (LOSS)** | **(345,881)** | **(162,055)** | **(72,073)** | **(146,247)** | **74,509** | **117,068** | **(534,679)** |

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Scott Andron     sandron@broward.org
- Paul J. Battista     pbattista@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;jzamora@gjb-law.com;gjbecf@ecf.courtdrive.com;vlambdin@gjb-law.com
- Steven M Davis     sdavis@bplegal.com
- Michael P Dunn     michael.dunn@dunnlawpa.com, rbasnueva@dunnlawpa.com;joel.knee@dunnlawpa.com;mzucker@dunnlawpa.com
- Julie Feigeles     jf@womenatlawfl.com
- Jerold C Feuerstein     jfeuerstein@kandfllp.com, litigation@kandfllp.com;rcappiello@kandfllp.com;skossar@kandfllp.com
- Brandon J Hechtman     bhechtman@wickersmith.com
- Kimberly H Israel     kisrael@mcglinchey.com, lwhite@mcglinchey.com
- Mark Journey     mjourney@broward.org, swulfekuhle@broward.org
- Andrew V Layden     alayden@bakerlaw.com, orlbankruptcy@bakerlaw.com;cmartin@bakerlaw.com
- James C. Moon     jmoon@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- Office of the US Trustee     USTPRegion21.MM.ECF@usdoj.gov
- Alberto H Orizondo     aorizondo@aglawpa.com, bfernandez@aglawpa.com
- Alexis S Read     alexis.read@dunnlawpa.com, asr@alexisreadlaw.com
- Humberto E Rivera     humberto@hriveralaw.com, G61034@notify.cincompass.com;humberto@ecf.courtdrive.com;documents@prodoxprep.com
- Raymond L Robinson     teri@rrobinsonlaw.com, ray@rrobinsonlaw.com
- Victor K Rones     vrones@victorkronespa.com, jrones@victorkronespa.com
- Peter D. Russin     prussin@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com;prussin@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- Zana Michelle Scarlett     Zana.M.Scarlett@usdoj.gov

EXHIBIT 1

**U.S. Trustee:** *(Notice provided via NEF)*
Office of The United States Trustee
51 SW First Avenue, Room 1204
Miami, FL 33130

**Debtor-in-Possession:** *(via U.S. Mail)*
Costa Hollywood Property Owner, LLC
777 North Ocean Drive
Hollywood, FL 33019

**Debtor-in-Possession's Attorney:**
*(Notice provided via NEF)*
Peter D. Russin, Esquire
James C. Moon, Esquire
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131

**Secured Creditors:** *(via U.S. Mail)*
777 N. Ocean Drive, LLC
520 Madison Ave
New York, NY 10022

777 N. Ocean Drive, LLC
c/o Jerold C. Feuerstein
Kriss & Feuerstein LLP
360 Lexington Ave #6502
New York, NY 10017

Baker Concrete Construction, Inc.
5555 Anglers Ave, Suite 1A
Fort Lauderdale, FL 33312

Beauchamp Construction Co Inc.
c/o Benjamin K. Artzt
2100 Ponce de Leon Blvd, Ste 825
Coral Gables, FL 33134

Design Engineering Group, LLC
c/o Harvey, F William, Esq.
5402 Red Cypress Lane
Fort Lauderdale, FL 33319

HVAC Associates, Inc.
PO Box 1355
Pompano Beach, FL 33061

Italkraft LLC
2900 NW 77 Ct
Doral, FL 33122

Lenny's Cleaning, Painting
& Waterproofing, Inc.
10040 NW 46 St
Fort Lauderdale, FL 33351

Tropic Fire Protection, Inc.
922 SW 36th Ave
Boynton Beach, FL 33435

United Leasing, Inc.
PO Box 5089
Evansville, IN 47715

**United States and its agencies:**
*(via U.S. Mail)*
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Services
Insolvency Unit
7850 S.W. 6th Court
Mail Stop 5730
Plantation, FL 33324

**Notice of Appearances:**
*(Notice provided via NEF*
*Upon Registered Users)*

Victor K. Rones, Esq.
*Attorney for Costa Investors LLC, Creditor*
16105 NE 18th Avenue,
North Miami Beach, FL 33162

EXHIBIT 2

**MASTER SERVICE LIST PER LOCAL RULE 2002-1(H)**

Andrew V. Layden, Esq.
*Attorneys for New Continent Ventures, Inc.*
Baker & Hostetler LLP
200 S. Orange Ave.
SunTrust Center, Suite 2300
Orlando, FL 32801-3432

Jerold C. Feuerstein, Esq.
*Attorneys for 777 N. Ocean Drive, LLC*
KRISS & FEUERSTEIN LLP
360 Lexington Avenue, Suite 1200
New York, New York 10017

Michael P. Dunn, Esq.
Alexis S. Read, Esq.
*Attorneys for Evolution Hospitality, LLC*
Dunn Law P.A.
66 W. Flagler Street, Ste. 400
Miami, FL 33130

Humberto Rivera, Esq.
*Attorneys for Professional Blinds
Systems, Inc.*
Rivera Law Firm, P.A.
P.O. Box 211746
Royal Palm Beach, FL 33421

Raymond L. Robinson, Esq.
*Attorneys for Pamela Terry*
RobinsonLaw, P.A.
1501 Venera Avenue, Suite 300
Coral Gables, FL 33146

Brandon J. Hechtman, Esq.
*Attorneys for Evolution Hospitality LLC and
AMO Hospitality Group LLC*
Wicker Smith O'hara
Mccoy & Ford, P.A.
2800 Ponce de Leon Boulevard
Suite 800
Coral Gables, FL 33134

Paul J. Battista, Esq.
Mariaelena Gayo-Guitian, Esq.
*Attorneys for 777 N. Ocean Drive, LLC*
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, Suite 4400
Miami, Florida 33131

Mark A. Journey, Esq.
Scott Andron, Esq.
*Attorneys for Broward County, Florida*
Broward County Attorney
Governmental Center, Suite 423
115 South Andrews Avenue
Fort Lauderdale, Florida 33301

Julie Feigeles, Esq.
*Attorneys for Eduardo Reyes Herrera
and Astrid Aurora Arevalo Molina*
Feigeles & Haimo LLP
7900 Peters Road, Suite B-200
Fort Lauderdale, FL 33324

Kimberly Held Israel, Esq.
*Attorneys for United Leasing, Inc.*
McGlinchey Stafford
10407 Centurion Parkway North, Suite 200
Jacksonville, FL 32256

Alberto H. Orizondo, Esq.
*Attorneys for Italkraft, LLC*
Law Office of Alexis Gonzalez, P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133

**20 Largest Unsecured Creditors:**
*(via U.S. Mail)*

Centrada Solutions, LLC
5010 Riverside Drive
# 300
Irving, TX 75039

Cielo Restaurant LLC
777 N Ocean Dr
# SF
Hollywood, FL 33019

**MASTER SERVICE LIST PER LOCAL RULE 2002-1(H)**

D-Essentials Inc.
218 S Dixie Hwy
Hallandale, FL 33009

FA Development and Real Estate
343 Commercial Street
#212
Boston, MA 02109

General Caulking And Coatings Co., Inc.
101 NW 176 St
Mami, FL 33169

Gustavo Carlos Lescovich Ramos
Parada 6 de la Brava
Edif Icon Bravia Depto #707
Punta del Este
URUGUAY

Hyvac, Inc.
312 S Military Trail
Deerfield Beach, FL 33442

Italkraft LLC
2900 NW 77 Ct
Doral, FL 33122

JM Plastering, Inc.
16333 NW 84 Ave
Hialeah, FL 33015

La Cuisine Intl Distributors, Inc.
2005 NW 115 Ave
Miami, FL 33172

Mr. Glass Doors & Windows Inc.
8120 NW 84 St
Miami, FL 33166

National Fire Protection, LLC
3125 W Commercial Blvd
# 200
Ft Lauderdale, FL 33309

Pablo Haeffner & Rita Cassia DaSilva
c/o Alexander M. Turner, Esq.
Law Offices of Alexander M. Turner, P.A.
317 Seventy First St
Miami Beach, FL 33141

Poma Construction Corp.
2049 SW Poma Dr
Bldg#1
Palm City, FL 34990

Renacer LLC
444 Brickell Ave
Suite 828
Miami, FL 33131

Ruben Eduardo Reyes Herrera
c/o Thomas R. Shahady
Shahady & Wurtenberger, P.A.
7900 Peters Rd, Ste B-200
Fort Lauderdale, FL 33324

SOS Security LLC
PO Box 6373
Parsippany, NJ 07054

Stones Unlimited, LLC
2114 SW 60 Way
Miramar, FL 33023

Unlimited Electrical Contractors
3500 Park Central Blvd N
Pompano Beach, FL 33064